IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

NANCY SYDNOR,                          )
               Plaintiff,                  )
                                     )          Civil Action No. 4:13-cv-00041
v.                                     )
                                     )
CAROLYN W. COLVIN,                     )
Acting Commissioner,                   )
Social Security Administration,        )          By:     Joel C. Hoppe
               Defendant.                  )          United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Nancy Sydnor asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. This Court has authority to decide Sydnor's case under 42 U.S.C. §§ 405(g) and 1383(c)(3), and her case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 15. After reviewing the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence in the record. Therefore, I recommend that this Court reverse the Commissioner's final decision and remand the case for further administrative proceedings.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court

1

asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. § 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S.

458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Sydnor previously filed for SSI and disability insurance benefits ("DIB") on March 16, 2006, alleging disability beginning February 8, 1999.[1] On her alleged onset date, Sydnor was a 37-year-old college graduate who had recently left her job in an elementary school. *See* Administrative Record ("R.") 68, 73. Sydnor collected Worker's Compensation for an unspecified injury from December 1999 through March 2001. She underwent fusion surgery on her lumbar spine in December 2000. R. 72. Sydnor reported that she did not try to find a less physically demanding job when she depleted her Worker's Compensation because she was depressed. R. 68.

In a written decision dated April 27, 2007, ALJ Mancuso found that Sydnor had a severe spinal disorder and a severe affective disorder. *See* R. 66–67, 70–73. ALJ Mancuso determined that, although Sydnor could not return to her past work, she could perform certain sedentary jobs.[2] *See* R. 67, 74–75. On appeal, the presiding district judge in the present case affirmed the Commissioner's decision. *See Sydnor v. Comm'r of Soc. Sec.*, No. 4:09-cv-25, 2010 WL

---

[1] This portion of the procedural history is taken from Administrative Law Judge ("ALJ") Thomas Mancuso's ("ALJ Mancuso") written decision dated April 27, 2007. (*See generally* R. 64–76.) The evidence that ALJ Mancuso cited in denying Sydnor's SSI and DIB applications is not in the administrative record that was filed in this case.

[2] "Sedentary" work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools. Although a sedentary job is defined as one [that] involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

3

1257749, at *1 (W.D. Va. Mar. 26, 2010).

Sydnor protectively filed the present SSI application in late July 2010. *See* R. 40, 25–26. She was 49 years old and had not worked since February 8, 1999, due to chronic back pain, "failed syndrome," and arthritis throughout her body. R. 158. A state agency denied Sydnor's application initially and upon reconsideration. R. 39, 50.

Sydnor appeared with counsel at an administrative hearing before ALJ Drew Swank ("the ALJ" or "ALJ Swank") on June 6, 2012. R. 20. She testified as to her back pain, the limits that pain had on her daily activities, and her inability to get free or low-cost healthcare in recent years. *See generally* R. 30–37. No one else testified at Sydnor's hearing.

In a written decision dated June 20, 2012, the ALJ found that Sydnor suffered from a severe "spine disorder, status post a . . . lumbar fusion and laminectomy." R. 11. He noted that this impairment limited Sydnor's "ability to lift and carry heavy objects" and to engage in postural activities, but that it did not meet or medically equal the criteria for a presumptively disabling spine disorder listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. R. 11–12.

The ALJ next determined that Sydnor had the residual functional capacity ("RFC")[3] to perform light work[4] with only occasional balancing, stooping, kneeling, crouching, crawling, and climbing stairs, ramps, ropes, ladders, or scaffolds. R. 12. At step four, he concluded that Sydnor could return to her past work as a physical education instructor in an elementary school as that

---

[3] "RFC" is an applicant's ability to work "on a regular and continuing basis" despite his or her limitations. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record, 20 C.F.R. § 416.945(a), and reflects the "total limiting effects" of the person's impairments, *id.* § 416.945(e).

[4] "Light work" involves "lifting no more than 20 pounds at a time" but "frequently" lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). Work in this category often requires "a good deal of standing or walking." *Id.* A person who can perform light work generally can also perform "sedentary" work. *Id.*

4

job is "generally performed." R. 16. Thus, he determined that Sydnor was not disabled for the period relevant to her application, which she filed on July 22, 2010. *Id.* ALJ Swank did not make an alternative finding whether Sydnor could perform other work that existed in the national economy given her age,[5] education, work history, and RFC. *See id.* The Appeals Council declined to review the ALJ's decision on July 17, 2013, R. 1, and this appeal followed.

### III. Statement of Facts

The record contains almost no medical evidence of Sydnor's physical condition after April 27, 2007. Sydnor reported receiving treatment for "chronic back pain" at Danville Pain Referral Center ("DPRC") from 2006 to 2009. R. 161. The state agency requested medical records from DPRC dated after July 1, 2009, but none existed. R. 225. In June 2012, Sydnor testified that she had not received any medical care since July 22, 2010. R. 25–26. Sydnor has repeatedly said that she does not have medical insurance, cannot afford to pay for services out of pocket, and does not have access to free healthcare. *See* R. 35, 37, 162, 184, 236. Thus, she could not produce any recent treatment records to support her SSI application.

A.       *Current Medical Evidence*

The state agency ordered x-rays of Sydnor's right hand and lumbar spine on April 19, 2011. *See* R. 230–31. The hand x-ray showed "no significant abnormalities involving the bones or soft tissues." R. 231. The spine x-ray showed posterior hardware fusion with pedicular screws, paraspinal rods, and a bone cage between L5 and L6 with "apparent anterior osseous fusion." R.

---

[5] Sydnor moved into a new age category while her SSI application was pending. She was 49 years old when she protectively filed in July 2010, which made her a "younger individual" under the Act's regulations. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(h)(1). Sydnor was 51 years old, or "approaching advanced age," when ALJ Swank issued his decision on June 20, 2012. *Id.* § 200.00(g). Had ALJ Swank reached step five of the evaluation process, he would have been required to consider Sydnor's ability to transition to other work at 51 years old. *See* 20 C.F.R. § 416.963(b).

230. Sydnor's lumbar vertebral body heights were preserved and there was no evidence of spondylolisthesis or endplate spurring. *See id.* The reviewing radiologist, Dr. Arash Chehrazi, M.D., noted his impression as: "L5-L6 posterior hardware fusion and L5 laminectomy without evidence of complication." *Id.*

The state agency also arranged for Dr. Glen Monteiro, M.D., to examine Sydnor on May 24, 2011. Sydnor told Dr. Monteiro that she first experienced lower back pain in 1998 while working as a physical education instructor. R. 233. A school doctor diagnosed low back strain at that time. Sydnor went back to work but "started experiencing lower midline lumbar back pain for the next five months." *Id.* She returned to the school doctor for an x-ray, which revealed a herniated disc at L4-L5. Sydnor had back surgery in 2000 that, combined with rehabilitation, relieved her pain for six months. *See id.*

Sydnor told Dr. Monteiro that she saw "multiple specialists who recommended physical therapy and . . . pain management for one year." R. 234. She underwent a "hardware block procedure," but was otherwise "unable to follow up with appropriate pain management [due to] lack of financial resources and no medical insurance." R. 236. Dr. Monteiro noted that these treatments occurred after Sydnor moved to Virginia, R. 234, but the record does not reveal when this move took place, *see* R. 34–35. Sydnor told Dr. Monteiro that her low back pain occasionally radiates to her left foot and is worse while bending forward, twisting, standing, or sitting for long periods. R. 234. Sydnor reported that she could tend to her personal needs, but had trouble putting on socks and shoes. She did not take any pain medications in May 2011. *Id.*

On exam, Dr. Monteiro observed that Sydnor walked with a normal gait, could walk on her toes and heels, and did not use an assistive device to ambulate. R. 235. She had full strength and normal sensation in her lower extremities, and her straight-leg tests were negative. R. 236.

6

She had normal range of motion in her hips and ankles. R. 235. Sydnor's upper-extremity strength was 4/5 bilaterally with normal sensation. R. 236. Dr. Monteiro observed that Sydnor's thoracolumbar range of motion was "restricted" at extension to 5 degrees, flexion to 60 degrees, and lateral flexion to 10 degrees bilaterally. R. 235, 236. "No other joint involvement . . . or deformity of the other joints was noted" on this exam. R. 236. Dr. Monteiro diagnosed "failed back syndrome."[6] R. 236

Based on these findings, Dr. Monteiro opined that Sydnor could sit, stand, and walk for four hours during an eight-hour workday; occasionally lift and carry eight pounds; and frequently lift and carry fewer than four pounds.[7] R. 236. He based these restrictions on Sydnor's "altered body mechanics secondary to the chronic low back pain." *Id.* Dr. Monteiro opined that Sydnor "should have limitations with stooping, crouching, [and] bending given her chronic back pain," but he did not specify the extent to which she could do those things. R. 237. He also noted that Sydnor "may consider using a single-point cane during acute flare-up of lower back pain process." *Id.*

State-agency consultant Dr. Martin Cader, M.D., reviewed the evidence in Sydnor's record in June 2011. R. 43–48. Dr. Cader opined that Sydnor could do light work with additional postural limitations. *See* R. 45. Specifically, Dr. Cader found that Sydnor could: sit, stand, and

---

[6] "Failed back syndrome," also called "failed back surgery syndrome," refers to chronic back or leg pain that occurs after spinal surgery. *Failed Back Surgery Syndrome*, N.Y.U. Langone Med. Ctr., http://pain-medicine.med.nyu.edu/patient-care/conditions-we-treat/failed-back-surgery-syndrome (last visited Aug. 12, 2014). It is an "imprecise term encompassing a heterogeneous group of disorders that have in common pain symptoms after lumbar surgery." *Id.* Symptoms include "diffuse, dull, and aching pain" in the back and legs. *Id.*

[7] These exertional limitations would disqualify Sydnor from all "light" work and at least some "sedentary" work. *See* 20 C.F.R. § 416.967(a)–(b); Soc. Sec. R. 96-9p, 1996 WL 374185, at *6 (Jul. 2, 1996) (noting that the "full range" of sedentary work requires a person to sit for about six hours in an eight-hour day).

walk for about six hours in a eight-hour day; occasionally lift 20 pounds and frequently lift 10 pounds; and occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 45–46. He attributed these restrictions to Sydnor's history of "back surgery and continued pain." R. 46. Another state-agency reviewer, Dr. Ralph Hellams, M.D., adopted Dr. Cader's opinions in July 2011. *See* R. 55–60.

B.   *Sydnor's Statements*

Sydnor completed a pain questionnaire and function report on March 14, 2011. R. 174–86. She reported experiencing constant aching, stabbing, burning, throbbing, and cramping pain in her lower back, legs, shoulders, neck, knee, and ankles. R. 174. Walking, sitting, and lying down exacerbated her pain. *Id.* She did not report taking any medication at that time. R. 175.

Sydnor reported that on a typical day in March 2011, she woke up, pulled the covers onto her bed, fed her dog and let him outside, ate a prepared breakfast, walked to the mailbox, played computer games, and rested. R. 179, 180. In the spring and summer, Sydnor tended to her flowerbeds for 30 to 60 minutes each day. R. 183. Sydnor also cut her grass with a riding lawnmower and went shopping once or twice a month. R. 182–83. Each activity took about 30 minutes. She denied cooking or engaging in regular social activities outside the home. R. 184.

Sydnor reported "no problem[s]" handling her personal care. R. 180. But she also reported that she could "no longer" sit, stand, walk, reach, lift, bend, squat, kneel, or climb stairs "[without] causing pain in [her] back." R. 184. She estimated that she could sit for 30 to 60 minutes before that pain became "unbearable." R. 183.

On June 6, 2012, Sydnor testified that she tried to walk for about 20 minutes each day, but that she must lie down afterwards. R. 33. She thought that she could lift "less than 10 pounds" and "sit for an hour or two" until the pain "intensifies, and in some cases [her] legs

8

become numb." R. 35, 36. She must lie down throughout the day to relieve those symptoms. *See* R. 36. Sydnor confirmed that she was able to tend to her personal needs, pull the covers onto her bed, go shopping alone or with others, "work in the flower bed every once and a while," mow her yard with a riding lawnmower, and use a microwave. R. 31, 32, 33. She again denied engaging in social activities outside the home and said that she had not driven a car in "maybe about six months." R. 30, 32–33.

Sydnor admitted that she had not received any medical care since July 22, 2010, and that she did not take any medication, besides an occasional Advil, to treat her pain. R. 31, 33, 36. Advil "maybe takes the edge off," but it otherwise did not help. R. 37. Sydnor gave two reasons for her lack of treatment. First, she did not have medical insurance, could not afford to pay for services out of pocket, and had no access to a free clinic where she lived. R. 35, 37. Second, despite her efforts to establish care, some doctors "will not see [her] because of the metal that's in [her] back." R. 35. When Sydnor's attorney asked if she had not sought medical treatment "because [her] condition's gotten better," Sydnor replied, "[t]hat's because I don't have the money." *Id.*

C.    *Previous Factual Findings*

On April 27, 2007, ALJ Mancuso issued a written decision denying Sydnor's March 16, 2006, DIB and SSI applications at step five of the sequential evaluation process. *See* R. 64–76. He determined that Sydnor had a "severe" spine disorder. *See* R. 66. After reviewing the medical and other evidence in Sydnor's record, *see* R. 68–73, ALJ Mancuso found that Sydnor could occasionally lift 10 pounds, frequently lift five pounds, and needed "to stand at her worksite from time to time," R. 67. He also found that Sydnor could not return to her past work in an elementary school, but, considering her "younger" age, education, and transferable "skilled"

work experience, she could perform certain sedentary jobs that accommodated a sit-stand option. R. 73–74.

## IV. Discussion

Sydnor primarily objects to ALJ Swank's finding that she can perform light work. She argues that he erred in weighing the findings of ALJ Mancuso and Dr. Monteiro, both of which limited her to sedentary work. Pl. Br. 12, 14–16. Assuming that substantial evidence supports ALJ Swank's final RFC, Sydnor also objects to his conclusion that she can return to her past work as a physical education instructor.[8] Pl. Br. 16–17.

The Commissioner responds that substantial evidence supports ALJ Swank's final RFC and that he "appropriately determined" that Sydnor could return to her past work as "generally performed." Def. Br. 9–13, 13–15. The Commissioner's first argument, like ALJ Swank's findings, relies heavily on Sydnor's lack of medical treatment during the relevant period. *See* Def. Br. 11–13.

A.      *Sydnor's Physical Capabilities*

Sydnor first argues that ALJ Swank did not "give the appropriate weight" to ALJ Mancuso's finding that she was restricted to a limited range of sedentary work. Pl. Br. 12, 14. She argues that the Fourth Circuit has held that a "claimant's RFC cannot be more onerous" than

---

[8] Sydnor argues that the job functions she performed as a physical education instructor exceeded the criteria for light work found by the ALJ. While that argument may be correct, the ALJ did not find that she could do her past work as she performed it; rather, he found that she could do her past work as generally performed. In assessing whether a claimant can do her past relevant work as it was generally performed, it is proper for an ALJ to rely on the *Dictionary of Occupational Titles* ("*DOT*") alone to define a job as it is usually performed in the national economy. *Goodman v. Astrue*, 539 F. Supp. 2d 849, 850 n.1 (W.D. Va. 2008). As ALJ Swank observed, the *DOT* states that the job of a physical education instructor is "light work" that requires "occasional" balancing, stooping, kneeling, crouching, crawling, and climbing. These criteria are consistent with the ALJ's determination of Sydnor's RFC. The Commissioner's decision is, however, deficient for other reasons that necessitate remand.

10

a previous RFC unless the Commissioner produces "substantial evidence of improvement in [the person's] medical condition . . . to indicate a higher level of work function." Pl. Br. 12. She notes that the Commissioner "points to no medical signs of improvement" in her case, and instead penalizes her for not seeking healthcare even though she "testified [that] she has no insurance and no means to treat." Pl. Br. 15. The Commissioner responds that the ALJ, "when determining whether a claimant is disabled during a previously unadjudicated period," simply must consider any "prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances." Def. Br. 9. She argues that ALJ Swank "appropriately determined that the sedentary RFC from [ALJ Mancuso's] decision was entitled to minimal weight" given the amount of time that had passed and Sydnor's failure to seek medical treatment between April 2007 and June 2012. Def. Br. 10.

The parties' arguments offer conflicting interpretations of *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987), and *Albright v. Commissioner*, 174 F.3d 473 (4th Cir. 1999). In *Lively*, an ALJ found that the 54-year-old applicant was not disabled because he could still perform light work. *See* 820 F.2d at 1391–92. At the time, agency regulations directed a finding of "disabled" for many applicants age 55 or older who were limited to light work. *See id.* at 1392. Lively turned 55 in early November 1981, just two weeks after the ALJ's unfavorable decision. In December 1983, he filed another application seeking benefits based on his new age and RFC. *See id.* The ALJ who reviewed Lively's new claim determined that Lively was not disabled because he was physically capable of performing all work. *See id.* That ALJ did not discuss the previous ALJ's finding that restricted Lively to light work.

The Fourth Circuit reversed and remanded. The panel found it "utterly inconceivable that [Lively's] condition had so improved in two weeks," and noted that the "[p]rinciples of finality

and fundamental fairness drawn from § 405(h) . . . indicate that the Secretary must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that [he] was capable of performing [more physically demanding] work." *Id.* at 1391 (citing 42 U.S.C. § 405(h)). The panel found "no evidence of any such miraculous improvement" in Lively's case. *Id.* Citing principles of *res judicata*, the panel remanded with instructions to award benefits beginning on Lively's 55th birthday. *See id.* at 1391–92.

In response to *Lively*, the agency issued Acquiescence Ruling ("AR") 94-2(4) requiring agency adjudicators in Fourth Circuit states to "adopt a finding made . . . in a final decision by an [ALJ] or the Appeals Council on a prior disability claim." AR 94-2(4), 1994 WL 321954 (Jul. 7, 1994), *rescinded by* 65 Fed. Reg. 1936-01 (Jan. 12, 2000). The agency interpreted *Lively*'s reference to "the principles of *res judicata*" to mean that findings of fact generally have *res judicata* effect. *See id.* at *2 ("[T]he Fourth Circuit concluded that where a final decision . . . contained a finding about a claimant's [RFC], the Secretary may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period . . . unless there is new and material evidence relating to the claimant's [RFC].").

In *Albright*, the Fourth Circuit rejected AR 94-2(4) as an unnecessarily narrow reading of *Lively*. *See* 174 F.3d at 475–76. Albright originally filed for DIB and SSI in April 1991, alleging disability beginning in March 1990. *See Albright*, 174 F.3d at 473. On May 28, 1992, an ALJ issued a written decision finding that Albright's impairments were not "severe" and did not meet the Act's duration requirement. *See id.* Albright refiled later that year, alleging disability beginning May 29, 1992. A second ALJ denied Albright's claims in 1994, but the decision was premised on a mechanical application of AR 94-2(4), not on an individualized assessment of Albright's physical condition during the relevant period. *See id.* Noting that Albright had failed

12

in 1992 to establish a "severe" impairment, "the second ALJ concluded that, absent new and material evidence regarding the severity of the alleged impairment, AR 94-2(4) dictated that Albright's claims again be denied." *Id.* at 475.

The district court reversed and remanded, noting that AR 94-2(4) "had interpreted [the Fourth Circuit's] holding in *Lively* too broadly." *Id.* The Commissioner appealed, and the Fourth Circuit affirmed. *See id.* at 478. The *Albright* panel clarified that *Lively* was not "a sea change in the law of preclusion," but a practical illustration of the substantial evidence rule. *Id.* at 477. "In other words, [the *Lively* panel] determined that the [first ALJ's] finding . . . that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the [second ALJ's] finding to the contrary," which did not take into account the first ALJ's finding, "unsupported by substantial evidence." *Id.* at 477–78. Without substantial evidence indicating otherwise, "common sense and logic dictated that Lively's physical condition was unlikely to have improved significantly within two weeks." *Id.* at 477.

In response to *Albright*, the agency issued AR 00-1(4) to guide ALJs in "determining whether a claimant [was] disabled during a previously unadjudicated period" where the claimant's "disability claim aris[es] under the same or different title of the [Social Security] Act." AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000). "It applies only to a finding of a claimant's [RFC] or other finding required at a step in the sequential evaluation process . . . [that] was made in a final decision by an ALJ or the Appeal Council on a prior disability claim." *Id.* The ALJ "must consider such a finding as evidence and give it appropriate weight in light of all relevant facts and circumstances." *Id.*

In determining what weight to give such a finding, the ALJ "will consider" factors including: (1) whether the fact on which the prior finding was based is subject to change over

time; (2) the "likelihood of such a change," considering the amount of time "between the period previously adjudicated and the period being adjudicated in the subsequent claim"; and (3) "the extent to which that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." *Id.* When considering a finding about a fact that is subject to change over time, like a claimant's RFC, the ALJ "generally should give less weight to such a finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote." *Id.* As long as the ALJ stayed within these bounds, I will not disturb a finding that is supported by substantial evidence in the record. *See Johnson v. Comm'r of Soc. Sec.*, No. 6:13-cv-3, 2014 WL 414243, at *7 (W.D. Va. Feb. 4, 2014).

In formulating Sydnor's RFC for light work, ALJ Swank considered ALJ Mancuso's finding that Sydnor "was capable of performing a limited range of sedentary work on April 27, 2007." R. 15. ALJ Swank found that this more restrictive RFC was "entitled to minimal weight [because] it was rendered more than three years before [Sydnor] filed her current application for disability and the evidence of record since [ALJ Mancuso's] decision reveals that [Sydnor] has not received any treatment for her impairments since then." *Id.*

Sydnor argues that the "facts in [her] case are almost identical to *Lively*" because, like Mr. Lively, Sydnor moved into a new age category between April 2007 and June 2012. Pl. Br. 14. Sydnor also states that, if she is still limited to sedentary work, she "would qualify . . . for disability simply because she has moved into a different age category." Pl. Br. 12. Thus, she argues that, "without substantial medical evidence of improvement," ALJ Swank should have "affirmed" ALJ Mancuso's findings that Sydnor "was limited to sedentary work with additional restrictions and that she could not perform her past relevant work." Pl. Br. 14. It follows,

14

according to Sydnor, that the Commissioner should have awarded SSI "pursuant to the [Medical-]Vocational Guidelines."[9] *Id.*

The facts in Sydnor's case are not "almost identical" to those in *Lively*. There, two weeks passed between the first ALJ's decision and Lively's 55th birthday. *See Lively*, 820 F.2d at 1392. Here, four years passed between ALJ Mancuso's decision and Sydnor's 50th birthday. Sheer passage of time is a legitimate reason to afford less weight to a factual finding that is subject to change over time, such as a claimant's RFC. *See Albright*, 174 F.3d at 477 ("Although we might state with some assurance that a claimant's condition very likely remains unchanged in a discrete two-week period, we would grow ever less confident as the timeframe expands."); *Johnson*, 2014 WL 414243, at *5 ("[A] lengthy passage of time increases the likelihood that the prior [RFC] is entitled to less weight.").

Sydnor also argues that ALJ Swank "failed to give the appropriate weight" to ALJ Mancuso's findings as to her RFC and inability to perform her past work. Pl. Br. 12. But *Lively* and *Albright* do not dictate that a previous ALJ's finding—once properly considered—is entitled to any particular weight. *See Lively*, 820 F.2d at 1392 (noting that the second ALJ did not discuss the first ALJ's findings); *Albright*, 174 F.3d at 477–78 (noting that *Lively* does not require, and the law of preclusion forbids, ALJs to mechanically adopt previous findings). Rather, the first ALJ's finding is "an important and probative fact" that the second ALJ must consider if the Commissioner's final decision is to withstand judicial review. *Albright*, 174 F.3d at 477; *accord*

---

[9] The Medical-Vocational Guidelines ("the grids") are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). The grids may be used to direct a finding of "disabled" or "not disabled" at step five of the disability evaluation in cases where the claimant suffers from "exertional" impairments only. *See Aistrop v. Barnhart*, 36 F. App'x 145, 146–47 (4th Cir. 2002) (per curiam); *see also* 20 C.F.R. § 416.969a.

*Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) ("Unless the [Commissioner] has analyzed all relevant evidence and sufficiently explained the weight . . . given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions are rational." (internal quotation marks omitted)).

In determining that Sydnor could perform light work, ALJ Swank clearly "considered" ALJ Mancuso's finding that she could perform only sedentary work. *See* R. 13. That said, I agree that substantial evidence in the record does not support ALJ Swank's disagreement with ALJ Mancuso's finding. To be sure, Sydnor's case is not as clear-cut as *Lively*. There, absent substantial evidence to the contrary, "common sense and logic dictated that Lively's physical condition was unlikely to have improved significantly in two weeks." *Albright*, 174 F.3d at 477. That logic "applies with nowhere near the force" where, as here, the relevant period exceeds three years. *Id.* But I cannot find any authority suggesting that mere passage of time would be enough to support ALJ Swank's disagreement with ALJ Mancuso's sedentary RFC finding. *See, e.g.*, *Johnson*, 2014 WL 414243, at *6–7 (finding that substantial evidence supported second ALJ's disagreement with first ALJ's sedentary RFC, issued nine years earlier, where the second ALJ considered new evidence that the claimant "worked a part-time job for eight hours a day at the light exertional level"; new medical records showing claimant received "minimal, . . . routine, conservative, and unremarkable" treatment for back pain; and new medical opinions indicating that the claimant was now capable of light work); *Watson v. Astrue*, No. 2:09-cv-39, 2010 WL 3244499, at *3 (W.D. Va. Aug. 17, 2010) (noting that new treatment records showed that the claimant's once "severe" mental impairment "improved greatly" during a two-year period); *Carter v. Barnhart*, 217 F. Supp. 2d 703, 706 (W.D. Va. 2002) (remanding where the

16

second ALJ, relying on the same evidence as the first ALJ eight years earlier, did not adequately explain his finding that the claimant's condition was no longer "severe").

Furthermore, the Commissioner does not argue that the passage of time alone supports ALJ Swank's decision. *See* Def. Br. 11. Rather, she argues that ALJ Swank "appropriately determined that the sedentary RFC from the earlier decision was entitled to minimum weight" because "there was no evidence that [Sydnor] underwent treatment . . . , let alone medical evidence that her impairment had worsened," between April 2007 and June 2012. Def. Br. 11. Considering Sydnor's claim that she could not afford medical care, the Commissioner's argument relies on a faulty legal standard, *see Albright*, 174 F.3d at 477, that also appears to be the one ALJ Swank applied in Sydnor's case.

"A claimant may not be penalized for failing to seek treatment that she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). It "flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because [she] is too poor to obtain the medical treatment that may help [her]." *Id.*; *see also* 20 C.F.R. § 416.110 ("The basic purpose underlying the [SSI] program is to assure a minimum level of income for people who are . . . disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level."). Thus, absent evidence to the contrary, a claimant's failure to seek healthcare that she cannot afford "cannot be considered as a reason for den[ying]" her disability benefits. *Breeden v. Astrue*, No. 5:10-cv-44, 2010 WL 5313291, at *1 n.1 (W.D. Va. Dec. 17, 2010); *accord Wooten v. Shalala*, No. 92-1636, 1993 WL 269267, at *4 (4th Cir. Jul. 16, 1993) (noting that *Lovejoy* did not control where the claimant had access to free healthcare and it was "not clear from the record that [the claimant] could not afford medical treatment"); *Lovejoy*, 790 F.2d at 1117 ("[Claimant's] testimony that she simply could not afford

further treatment is uncontradicted on the record."); *Riegel v. Colvin*, No. 7:12cv526, 2014 WL 462525, at *8 (W.D. Va. Feb. 5, 2014) ("*Lovejoy* and its progeny do not in any way preclude the ALJ from considering inconsistencies in the record that undermine [the claimant's] credibility.").

ALJ Swank mentioned Sydnor's lack of medical treatment as a reason for denying her SSI claim several times throughout his written decision. *See, e.g.*, R. 13, 14, 15, 16. For example, he found that Sydnor "has insurance . . . [and] tried to get treatment at the Free Clinic." R. 13. Those findings conflict with undisputed evidence in the record. Sydnor told Dr. Monteiro in May 2011 that she was "unable to follow up with appropriate pain management given her lack of financial resources and no medical insurance." R. 236. At the administrative hearing before ALJ Swank in June 2012, Sydnor also testified that she lost her insurance. R. 35. Nor did Sydnor testify "that she had tried to get treatment at the Free Clinic." R. 13. Rather, she testified that she had "investigated" free clinics and found that "[t]here's not one in South Boston" where she lives. R. 37. Nothing in the record contradicts Sydnor's statements.[10] If anything, it explains why Sydnor did not produce the voluminous medical evidence in 2010–2012 that she did in 2006–2007.[11] *Compare* R. 19, *with* R. 69–79.

---

[10] The Commissioner acknowledges that Sydnor "explained that she had not under gone medical care . . . because she no longer had health insurance" and "that she has not sought treatment from a free clinic because there had been none in South Boston." Def. Br. 7 (citing R. 35, 37). She does not argue that there is any evidence in the record contradicting Sydnor's explanations.

[11] ALJ Swank did not consider that earlier medical evidence, though. *See* R. 19. Instead, he found that ALJ Mancuso's sedentary RFC was "entitled to minimal weight" because "the evidence of record since this decision was rendered [in April 2007] reveals that [Sydnor] has not received any treatment for her impairments since then." R. 15. That finding also may be wrong. In November 2010, Sydnor reported receiving treatment for "chronic back pain," including "hardware blocks, physical therapy for a couple of weeks, [and] medication," at Danville Pain Referral Center ("DPRC") from 2006 to 2009. R. 161. But the state agency only requested medical records dated after July 1, 2009, which DPRC did not have. *See* R. 225. Thus, it appears that ALJ Swank did not have all of the evidence he needed to adequately evaluate Sydnor's condition between April 2007 and June 2012.

18

These facts distinguish Sydnor from the claimant in *Mabe v. Colvin*, No. 4:12-cv-52, 2013 WL 6055239 (W.D. Va. Nov. 15, 2013) (Kiser, J.). There, the ALJ discredited Mabe's complaints of disabling pain because he had significant gaps in treatment and had not followed through with physical therapy. *See* 2013 WL 6055239, at *6. On appeal to the district court, Mabe argued for the first time that his occasional treatment at free clinics proved that he could not afford consistent treatment, so that the gaps in his treatment and failure to obtain physical therapy should not weigh against his credibility. *See id.*

The presiding district judge agreed that a "claimant may not be penalized for failing to seek treatment [he] cannot afford." *Id.* (alteration in original) (citing *Lovejoy*, 790 F.2d at 1117). Mabe, however, "did not offer any explanation for his failure to seek treatment or comply with his treatment plan, and only later argued that he was financially unable to do so." *Id.* at *7. Further, the evidence in the record suggested that he "simply did not take advantage of the community resources available to him." *Id.* Thus, the presiding district judge found "substantial evidence to support the ALJ's finding that [Mabe's] gaps in treatment and failure to obtain treatment render[ed] his complaints less than credible." *Id.*

The same cannot be said in Sydnor's case. In addition to mischaracterizing Sydnor's statements about her medical insurance and access to free healthcare, ALJ Swank did not mention Sydnor's repeated statements that she cannot afford to pay for healthcare out of her own pocket. *See* R. 35, 37, 162, 184, 236. On this record, Sydnor's failure to obtain healthcare could not "be considered as a reason for den[ying]" her SSI claim. *Breeden*, 2010 WL 5313291, at *1 n.1 (citing *Lovejoy*, 790 F.2d at 1117). But it was the only evidentiary reason ALJ Swank gave for rejecting ALJ Mancuso's sedentary RFC finding.

19

Nor is there any other evidence in the record that might independently support ALJ Swank's disagreement with ALJ Mancuso's RFC finding. Sydnor had not "amassed new medical records, medical provider opinions, daily activities, and other new evidence," *Johnson*, 2014 WL 414243, at *5, upon which ALJ Swank could have relied to support his finding. The only examining source medical opinion in this record limits Sydnor to sedentary work. *See* R. 236. Sydnor's recent daily activities[12] appear to be even more limited than they were in 2006–2007 when ALJ Mancuso found that Sydnor could perform at most sedentary work. *Compare* R. 31– 33, 179–84, *with* R. 69–70.

Legal "[e]rrors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*,

---

[12] In March 2011 and June 2012, Sydnor reported that she could care for herself without assistance, went shopping once or twice a month, could use a microwave but did not prepare her own meals, tended to her flower beds for 30 to 60 minutes "every once and a while," used a riding lawnmower once or twice a month, and pulled the covers onto her bed each morning. She also reported that she must take breaks during these activities and needed to rest throughout the day. *See* R. 31–33, 179–84. In his written decision, ALJ Swank found that Sydnor was "able to engage in activities of daily living, including shopping, preparing food, making her bed, working in flower beds, mowing the grass with a ride on mower, climbing the stairs in her house, and taking care of her personal needs without assistance." R. 14. He concluded that these activities were "not limited to the extent one would expect[] given [Sydnor's] complaints of disabling symptoms and limitations." *Id.*

Sydnor's activities, even as ALJ Swank described them, are quite modest. *Cf. Ellis v. Colvin*, No. 5:13-cv-43, 2014 WL 2862703, at *11 (W.D. Va. Jun. 24, 2014) (describing an applicant who could "occasionally shop" alone or with others, "generally take care of her personal needs independently," "prepare simple foods such as sandwiches and frozen dinners," "wash dishes, dust, and help her husband fold laundry for brief periods"). Several courts have recognized that a claimant's ability to perform modest activities of daily living is not a reason to reject claims that impairments cause disabling limitations. *See id.* at *12–13 (collecting cases). This is because a claimant's ability to struggle through daily tasks at home, on her own schedule, with possible help from others "does not mean that she can manage the requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *accord Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Thus, Sydnor's recent daily activities cannot independently support ALJ Swank's disagreement with ALJ Mancuso's sedentary RFC finding.

614 F. Supp. 2d 679, 696 (W.D. Va. 2009); *accord Edwards v. Astrue*, No. 4:12cv5, 2012 WL 6082898, at *3 (W.D. Va. Dec. 6, 2012) (Kiser, J.) (holding that a legal error may be harmless if the record could support only the conclusion reached by the Commissioner). The error in this case was not harmless.

Sydnor reported the same vocational profile in her July 2010 SSI application as in her previous application. *Compare* R. 73–74, *with* R. 159, 167. As Sydnor suggests, a reasonable ALJ could conceivably find that Sydnor did not acquire any transferable skills from her last job as a physical education instructor. *See* Pl. Br. 15. In that situation, the grids may direct a finding of "disabled" based on Sydnor's age, education, and sedentary RFC.[13] *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.14. On the other hand, ALJ Mancuso's findings as to Sydnor's physical RFC, education, and transferable skills, R. 73, 74, may have permitted a finding of "not disabled" had the ALJ made those same findings on her current application.[14] *See id.* §§ 201.15, 201.16. But ALJ Swank did not make any findings as to Sydnor's vocational factors because he denied her claim at step four. Furthermore, although Sydnor argues that the grids direct a finding of "disabled," turning 50 does not entitle her to benefits, even if she is still limited to sedentary work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(g).

The record does not compel one conclusion. Accordingly, remand is required to weigh the medical evidence and assess Sydnor's impairments and restrictions.

---

[13] The Commissioner is not obligated to "affirm" ALJ Mancuso's sedentary RFC finding on remand. Rather, for the reasons further explained below, ALJ Swank failed to consider all relevant evidence in the record, to make required factual findings, and to adequately articulate the grounds for his conclusions. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

[14] ALJ Mancuso did not rely on the grids to direct a finding of "not disabled" in April 2007. He relied on a vocational expert's testimony to find that Sydnor could perform specific sedentary jobs that would accommodate a sit-stand option. R. 74.

21

B.     *Medical Opinions*

Sydnor also argues that the ALJ's choice between conflicting medical opinions was "irrational" because Dr. Monteiro's opinion is essentially "the only medical record of a physician" who examined Sydnor during the relevant period. Pl. Br. 15.

Agency regulations instruct ALJs to weigh each medical opinion in the record. 20 C.F.R. § 416.927(c). The regulations classify medical opinions by their source: those from treating sources and those from non-treating sources. *See id.* Opinions from non-treating sources are not entitled to any particular weight. *See id.* Rather, the ALJ must consider certain factors in determining what weight to give such opinions, including the source's familiarity with the applicant, the weight of the evidence supporting the opinion, the source's medical specialty, and the opinion's consistency with other relevant evidence in the record. *See id.* Opinions from examining physicians generally are entitled to greater weight than opinions from non-examining physicians, such as state agency medical reviewers. *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Ultimately, "the ALJ must consider the opinions received in light of the evidence of record and the ALJ must determine whether the record supports the opinions offered." *Stonestreet v. Astrue*, 5:12-cv-111, 2014 WL 992098, at *5 (W.D. Va. Mar. 14, 2014). As always, the ALJ's choice between conflicting evidence must be supported by substantial evidence in the record. *See Johnson*, 434 F.3d at 656.

ALJ Swank gave "minimal weight" to Dr. Monteiro's opinion that Sydnor could perform less than sedentary work because it was "based on his one time examination of [Sydnor] and essentially adopts [her] statements without balance or objectivity." R. 15. The ALJ did not expressly assign a weight to Dr. Cader's opinion that Sydnor could "perform light work with occasional postural activities." R. 14, 15. However, he found that it was "balanced, objective,

22

consistent, and supported by the credible evidence of record as a whole, particularly [Sydnor's] lack of treatment and the minimal findings on the one time consultative examination." The ALJ also noted that, while Dr. Cader did not physically examine Sydnor, his opinion was "based on a thorough review of the longitudinal evidence of record." R. 15.

Substantial evidence does not support the ALJ's choice between conflicting evidence in this case. First, Dr. Monteiro's findings and opinion are the only medical evidence from an examining physician in Sydnor's record. Thus, this is not a case where the ALJ could point to other examining physicians' findings that were inconsistent with Dr. Monteiro's opinion made after an isolated examination. *Compare Davis v. Colvin*, No. 4:13-cv-35, slip op. at 14 (W.D. Va. Jul. 14, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 3890495 (Aug. 7, 2014) (Kiser, J.).

Second, ALJ Swank did not explain why Dr. Monteiro's RFC assessment "essentially adopts [Sydnor's] statements without balance or objectivity."[15] R. 15. Dr. Monteiro's opinion is certainly consistent with Sydnor's contemporaneous report that her pain is "worse on standing or sitting for long periods of time as well as bending forward and twisting." R. 234. But Dr. Monteiro also stated that his opinion was "based on" his examination findings, including Sydnor's "restrictive range of motion of the thoracolumbar back" and altered body mechanics status post a "failed" spinal-fusion surgery and laminectomy. R. 236. Given the lack of other medical evidence in this record, I cannot say that the similarities between Sydnor's report and

---

[15] In her brief, the Commissioner argues that Dr. Monteiro's opinion "is wholly unsupported by his generally normal examination findings." Def. Br. 11. Some of Dr. Monteiro's findings were normal, but others were not. Moreover, ALJ Swank did not cite any purported inconsistency between Dr. Monteiro's findings on exam and his determination of Sydnor's restrictions as a reason for rejecting Dr. Monteiro's opinion. *See* R. 15. This Court cannot rely upon the Commissioner's brief to supply necessary findings or explanations that the ALJ did not provide in his written decision. *See Fridley v. Astrue*, No. 5:13-cv-60, 2014 WL 2468821, at *9 (W.D. Va. Jun. 3, 2014) (citing *Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (4th Cir. 2014) (citing *SEC v. Chenery Corp.*, 332 U.S. 194–95 (1947) ("[A] reviewing court . . . must judge the propriety of [an agency] action solely by the grounds invoked by the agency."))).

23

Dr. Monteiro's medical opinion, without more, adequately support ALJ Swank's finding that the examining physician's opinion is entitled to minimal weight.

Furthermore, it is difficult to understand how the state agency physicians' RFC assessments for light work can be "based on a thorough review of the longitudinal evidence of record," R. 15, when those doctors did not review ALJ Mancuso's findings or the medical evidence underpinning those findings. *See* R. 41–43, 52–53 (listing the "evidence of record"); 48, 59 (noting that no Acquiescence Rulings apply in Sydnor's case). Because the ALJ's reasons for adopting the state agency physicians' opinions over that of Dr. Monteiro do not withstand scrutiny, substantial evidence does not support ALJ Swank's finding that Sydnor could perform light work with occasional postural activities as of June 2012. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (holding that reliance on a non-examining physician's opinion cannot, by itself, constitute substantial evidence), *cited with approval in Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

## V. Conclusion

I find that the Commissioner's final decision is not supported by substantial evidence in the record. ALJ Swank's disagreement with ALJ Mancuso's sedentary RFC predominately relies upon Sydnor's lack of medical treatment during the relevant period—a fact that he erroneously evaluated given Sydnor's uncontradicted explanation that she did not have medical insurance, could not afford to pay for care out of pocket, and did not have access to free healthcare. Similarly, given the paucity of other medical evidence in this record, substantial evidence does not support ALJ Swank's decision to credit the state agency medical opinions limiting Sydnor to light work over an examining physician's medical opinion limiting her to sedentary work. Therefore, I recommend that this Court **GRANT** Sydnor's Motion for Summary Judgment, ECF

No. 16, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 18, **REVERSE** the Commissioner's final decision, and **REMAND** this case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: September 2, 2014

Joel C. Hoppe
United States Magistrate Judge